<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT VICTOR ROGGIO, and CALLIE LASCH ROGGIO,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, UNKNOWN AGENTS OF THE FEDERAL BUREAU OF INVESTIGATION, and JOHN DOES 1-10 (being fictitious names),<br><br>Defendants. | Civil Action No. 08-4991 (ES)<br><br><br><u>OPINION</u> |

**F**ALK**, U.S.M.J.**

Plaintiffs Vincent Victor Roggio and Callie Lasch Roggio bring suit against Defendant Federal Bureau of Investigation ("FBI") and unknown Doe defendants for violation of the Privacy Act, 5 U.S.C. § 552a <u>et seq.</u>, and various torts under state law. Before the Court is Plaintiffs' motion for leave to file a second amended complaint. <u>See</u> CM/ECF No. 119. Defendant FBI opposes the motion. <u>See</u> CM/ECF No. 126. For the reasons set forth below, Plaintiffs' motion is **denied**.

### I. BACKGROUND

This case arises from the alleged dissemination of Plaintiff Vincent Roggio's FBI criminal history record, commonly referred to as a "rap sheet." The rap sheet surfaced while several highly contentious civil actions involving Vincent Roggio were pending in this Court, each of which are discussed below in greater detail where relevant.

1

A.     **Vincent Roggio's Criminal History**

Plaintiffs Vincent Victor Roggio and Calle Lasch Roggio are husband and wife and reside in New Jersey (Am. Compl. ¶¶ 8-9). Vincent Roggio has a criminal record. In 1987, a jury sitting in the Southern District of Florida convicted Roggio on three counts of mail fraud and four counts of making false statements to influence bank loans, United States v. Roggio, No. 85-764-Cr-EPS. He was sentenced to twelve (12) years in prison and ordered to pay roughly $13 million in restitution. The Eleventh Circuit affirmed on direct appeal, United States v. Roggio, 863 F.2d 41 (11th Cir. 1989), and the Sixth Circuit denied his petition for post-conviction habeas relief, Roggio v. Clark, 977 F.2d 582 (6th Cir. 1992).

B.     **Related Lawsuits and the Rap Sheet**

  i.     **Dispute with the Emmanouils**

Beginning in late 2000, Vincent Roggio formed a relationship with Zachary Emmanouil, a Florida attorney. Although Emmanouil at least initially provided legal services for Roggio, the two began to discuss commercial business opportunities and eventually entered into a series of failed real estate investments (Pl.'s Reply to Opp. to Mot for Leave ("Pl.'s Reply") at 12).

In March of 2006, Emmanouil and several other members of his family filed suit against Roggio in this Court under the caption Emmanouil v. Roggio for various state law torts primarily sounding in fraud, breach of contract, and conversion. See Docket No. 06-1068, CM/ECF No. 1.[1] At the time the complaint ("Emmanouil Compl.") was filed, the plaintiffs were collectively represented by Mitchell Pascual of Scarinci & Hollenbeck. The complaint alleged generally that

---

[1] For purposes of clarity, all references to docket entries standing alone relate to submissions made in the present Roggio matter. All references to docket entries preceded by a case number relate to submissions made in that case. For example, the above-noted reference indicates entry one (1) on the Emmanouil docket, which is assigned case number 06-1068.

Roggio made a series of materially false representations causing each plaintiff to lose substantial sums of money (Emmanouil Compl. passim). One paragraph disclosed what claimed to be Roggio's entire non-public record of criminal history, dating as far back as 1973 (Id. ¶ 254).

Roggio moved to disqualify plaintiffs' counsel and to strike the complaint in its entirety. See Docket No. 06-1068, CM/ECF No. 4. The Court disqualified Scarinci Hollenbeck from representing all named plaintiffs other than Zachary Emmanouil, Pallon v. Roggio, No. 04-3625, 2006 WL 2466854 (D.N.J. Aug. 24, 2006),[2] and also struck the complaint in its entirety, Emmanouil v. Roggio, No. 06-1068, 2006 WL 2927621 (D.N.J. Oct. 11, 2006), due to the potential risk that the firm could use communications obtained during Emmanouil's attorney client relationship with Roggio for the benefit of the other named plaintiffs. The remaining plaintiffs[3] subsequently retained counsel from the firm of McElroy, Deutsch, Mulvaney & Carpenter LLP ("MDMC"). See Docket No. 06-1068, CM/ECF No. 26.

### ii.     The Rap Sheet

Several days after the motion to strike the complaint was granted, abstracts of Roggio's criminal history were published on a website with a domain name similar to one of his businesses (Am. Compl. ¶ 18). Roggio determined that, based on the formatting of the content, the abstracts came from his FBI record (Id. ¶ 19). He also noticed that the paragraph in the Emmanouil complaint which catalogued his criminal history tracked some of the language from the website verbatim (Pl.'s Brief in Supp. of Mot. for Leave ("Pl.'s Brief") at 6).

---

[2] The case was consolidated for purposes of the motion to disqualify with a similar fraud action against Vincent Roggio pending in the District of New Jersey, Pallon v. Roggio, No. 04-3625, in which Scarinci Hollenbeck also represented all name plaintiffs. The parties to that matter entered a settlement on October 27, 2006. See Docket No. 04-3625, CM/ECF No. 71.

[3] At about the same time that these motions were decided, Zachary Emmanouil filed a petition for Chapter 7 bankruptcy in Florida, and the Trustee voluntarily dismissed all of his claims against Roggio in the Emmanouil action. See Docket No. 06-1068, CM/ECF No. 23.

In January of 2007, Roggio moved in the pending civil action to assert affirmative claims against the Emmanouils for allegedly publishing his "rap sheet" on the internet. See Docket No. 06-1068, CM/ECF No. 55. Filed in tandem with that motion was an application to seal the supporting documents that referenced the website and discussed the criminal history contained therein. See Docket No. 06-1068, CM/ECF No. 54. The Honorable Tonianne J. Bongiovanni, U.S.M.J., granted the motion to seal, but denied Roggio leave to assert new claims against the Emmanouils. See Emmanouil, 2007 WL 1174876 (D.N.J. April 19, 2007).

### iii. Lawsuit Against McElroy, Deutsch, Mulvaney & Carpenter

Roggio later moved to disqualify MDMC as counsel for the remaining plaintiffs in the Emmanouil action. See Docket No. 06-1068, CM/ECF No. 115. In opposing the motion, the Emmanouils submitted a certification that publicly attached a copy of the website. See Docket No. 06-1068, CM/ECF No. 117 Attach. 1. On January 20, 2010, Roggio filed a complaint directly against MDMC and the Emmanouils in Superior Court, Monmouth County, styled Roggio v. McElroy, Deutch, Mulvaeny & Carpenter, LLP et al., for defamation and violation of Roggio's right to privacy. It was removed to New Jersey District Court on February 17, 2010, pursuant to 28 U.S.C. § 1441.

### iv. Disposition of the Emmanouil and McElroy Matters

On April 14, 2010, the Honorable Joel A. Pisano, U.S.D.J., dismissed the McElroy action in its entirety. He determined that MDMC was protected by the absolute litigation privilege and the claims against the Emmanouils were barred by the applicable statute of limitations. See Roggio, No. 10-777, 2010 WL 1492594 (D.N.J.). Roggio appealed, and the Third Circuit affirmed in an unpublished decision. Id., 415 Fed. Appx. 432 (3d Cir. 2011).

Chief Judge Garrett Brown, U.S.D.J., held a jury trial in the Emmanouil case between

August 24 and September 3, 2010. The jury returned a verdict in favor of the Emmanouils and, on April 8, 2011, the Court entered a judgment against Vincent Roggio in the amount of $1,945,119.00. See Docket No. 06-1068, CM/ECF Nos. 274, 324. Roggio has since filed an appeal with the Third Circuit. See Docket No. 06-1068, CM/ECF No. 329.

### C.      Present Lawsuit Against the FBI

#### i.      Summary of Claims

On October 8, 2008, almost two years after portions of his "rap sheet" apparently surfaced on the internet, Plaintiffs Vincent and Callie Roggio brought this suit against the FBI and unknown Doe defendants for violation of the Privacy Act, 5 U.S.C. § 552a et seq., violation of Fifth Amendment due process rights, and various torts including defamation, false light, invasion of privacy, tortuous interference with contract, and tortuous interference with economic advantage. See CM/ECF No. 1. The complaint alleged that "unknown field agents" of the FBI from the Newark field office, and perhaps an agent that helped secure his criminal conviction in 1987, intentionally disseminated Roggio's criminal rap sheet (Compl. ¶ 20). Defendant FBI strenuously denied the allegations on factual and legal grounds.

On July 9, 2009, the Honorable Jose L. Linares granted in part and denied in part the FBI's motion to dismiss the complaint pursuant to Rule 12(b)(6). See CM/ECF No. 29. Specifically, the Court dismissed Roggio's Privacy Act claim without prejudice for failure to plead sufficient facts, but dismissed the Fifth Amendment claim with prejudice for failure to state a claim as a matter of law. See Roggio v. FBI, No. 08-4991, 2009 WL 2460780 (D.N.J. July 9, 2009). The remaining state law claims were not substantively addressed by Defendant. Id. Plaintiffs thereafter filed an amended complaint with amplified factual allegations in which they assert violation of the Privacy Act, 5 U.S.C. § 552a et seq., as against Defendant FBI, and the

5

same state law claims as against Doe Defendants. See CM/ECF No. 31.

### ii.      Discovery and Plaintiffs' Theory of the Case

The Court entered a pretrial scheduling order that provided the parties through September 30, 2009, to "add new parties or amend pleadings" and set fact discovery to close on April 1, 2010. See CM/ECF No. 50. Fact discovery proceeded in the following months; initial disclosures were exchanged, interrogatories were served, and Plaintiffs held almost a dozen depositions. The Court, at the suggestion of the parties during a February conference, extended the fact discovery deadline to October 1, 2010. See CM/ECF No. 62. No request was apparently made to extend the time within which the parties could seek leave to amend.

Several discovery disputes remained unresolved by October 1, 2010. Neither party, however, sought any further extensions of the dates established in the as-amended scheduling order. The Court held an in-person conference on December 1, 2010, during which all outstanding discovery disputes were resolved and the parties were advised to proceed with any further discovery expeditiously. See CM/ECF Nos. 76-77. Roggio held a 30(b)(6) deposition of a representative from the FBI in late January, and the Court held several follow-up conferences to address ongoing disputes as they arose. See, e.g., CM/ECF Nos. 80, 88, 100-01, 106. By the time of the most recent conference on June 6, 2011, Plaintiffs acknowledged that fact discovery was essentially complete and the parties were ready to file dispositive motions (Transcript of June 6, 2011 Hearing ("Tr. of June 6, 2011") at 18:17-23, 22:13-18).

Plaintiffs learned through discovery that Roggio's FBI rap sheet was pulled on January 11, 2006, by a police department in Massachusetts after what Plaintiffs term a fabricated shop-lifting incident involving Vincent Roggio was reported (Pl.'s Brief at 7, 8). This supposedly occurred shortly before the information was incorporated into a draft of the complaint originally

filed in the Emmanouil action (Id. at 8; Transcript of December 1, 2010 Hearing vol. 2 ("Tr. of Dec. 1, 2010") at 13:9-25). According to Plaintiff, the type of search performed in the FBI repository required Roggio's "Federal ID number" in order to effectuate a search result (Pl.'s Brief at 8; Tr. of Dec. 1, 2010 at 38:10-25). Plaintiffs maintain that the FBI violated the Privacy Act by passing along Roggio's Federal ID number to the individual that ultimately caused the pull of his rap sheet on January 11, 2006 (Pl.'s Brief at 8; Tr. of Dec. 1, 2010 at 13:1-8).

### iii. Motion and Arguments

On April 21, 2011, Plaintiffs filed a second amended complaint on the public docket with restricted access pursuant to Local Civil Rule 5.3(c)(3), despite failing to obtain leave of court or the consent of Defendant FBI. See CM/ECF No. 102. That amendment apparently sought to add parties that were previously dismissed by this Court and the Third Circuit in the McElroy action and assert new claims against the FBI. Id. After being informally advised that filing without consent or court order was improper, Plaintiffs submitted a motion on June 3, 2011, for leave to amend nunc pro tunc. See CM/ECF No. 107. At the conference held on June 6, 2011, the Court advised Plaintiffs that the complaint filed on April 21, 2011, was improper (Tr. of June 6, 2011 at 4:11-18), and expressed serious concern that the amendments sought to add parties already dismissed in the McElroy action by Judge Pisano and affirmed the Third Circuit (Id. at 9:20-25). Indeed, Plaintiffs' counsel stated that he intended to seek rehearing en banc of the Third Circuit's decision (Id. at 6:9-13, 7:16-21). Plaintiffs thereafter withdrew both filings.

On July 11, 2011, Plaintiffs filed the present motion for leave to file a "revised second amended complaint." See CM/ECF No. 119. The amendment seeks to add the following new claims only against the FBI: (a) violation of Fifth Amendment due process rights; (b) violation of the administrative duty to maintain the integrity of records; and (c) violation of the

7

administrative duty to investigate the accuracy of its records. Id.  These claims appear to include some additional factual allegations. Id.[4]  Plaintiffs argue that they were able to establish these new claims "through discovery" (Pl.'s Brief at 5).  In fact, Plaintiffs represented to the Court at the conference held on June 6, 2011, that the new claims against the FBI were "primarily based on a deposition of Mr. Rudge [of the FBI] recently" (Tr. of June 6, 2011 at 23:7-12).  Defendant FBI objects on grounds of futility and prejudice.  They contend that Judge Linares already dismissed the Fifth Amendment claim, the FBI is shielded by the doctrine of sovereign immunity with respect to the remaining claims, and permitting further amendment at this stage in the litigation would be prejudicial (Def.'s Brief in Opp. To Pl.'s Mot. for Leave at 5-8).

## II.  DISCUSSION

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits a party to amend its pleading at any point prior to trial "only with the opposing party's written consent or the court's leave."  Leave should be freely given by the Court "when justice so requires." Id.  This mandate encompasses a broad range of equitable factors. Arthur v. Maersk, Inc., 434 F.3d 196, 203 (3d Cir. 2006) (citations omitted).  A court will consider whether the delay in seeking amendment is undue, motivated by bad faith, prejudicial, or if it would ultimately be futile. See, e.g., Adams v. Gould, Inc., 739 F.2d 858, 864 (3d Cir. 1984).  Absent one of these factors, leave should be "freely given." Foman v. Davis, 371 U.S. 178, 182 (1964).  The decision to grant leave rests in the sound discretion of the Court. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971).

Here, the date set in the scheduling order to move to add parties or amend pleadings has

---

[4] The proposed "revised second amended complaint" conspicuously omitted the Doe Defendants from the caption and no longer included the state law claims contained in the two prior complaints.

long passed.  Therefore, Plaintiffs must first demonstrate "good cause" under Rule 16 of the Federal Rules of Civil Procedure as to why they should be permitted to amend after the deadline for doing so has lapsed before the Court can consider the Rule 15 factors.  See Dimensional Commc'n, Inc. v. OZ Optics, Ltd., 148 Fed. Appx. 82, 85 (3d Cir. 2006) (noting Third Circuit has adopted a "good cause" standard when a party moves to amend outside the deadline in a scheduling order (citing E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir. 2000))); see also Assadourian v. Harb, No. 06-896, 2008 WL 4056361, at *2 (D.N.J. Aug. 28, 2008) (treating such a motion as "a request to amend the Pretrial Scheduling Order").

### A.     Good Cause Under Rule 16(b)

Rule 16(b)(4) provides in relevant part: "A schedule may be modified only for good cause."  See also L. Civ. R. 16.1(a)(2).  Good cause largely depends on the diligence of the moving party.  Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990) (citing advisory committee's note on subdivision (b) (1983 Amendments)).  To establish good cause, the movant must show that "despite its diligence, it could not reasonably have met the scheduling order deadline."  Hutchins v. United Parcel Service, No. 01-1462, 2005 WL 1793695, at *3 (D.N.J. July 26, 2005).  What will constitute "good cause" to warrant modification "necessarily varies with the circumstances of each case." 6A Alan Wright et al., Federal Practice & Procedure § 1522.2, at 313 (3d ed. 2010).  The Court therefore has "great discretion in determining what kind of showing the moving party must make in order to satisfy the good cause requirement of Rule 16(b)." Thoman v. Philips Med. Sys., No. 04-3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007) (Brown, C.J.) (citing 3 James W. Moore et al., Moore's Federal Practice § 16.14[1][b] (3d ed.1997)).  Nevertheless, courts regularly find that the standard is not satisfied when a party was aware of the facts that would lead it to amend and

failed to act on it. See Eichorn v. AT&T Corp., 484 F.3d 644, 651 (3d Cir. 2007); see also Marathon Fin. Ins., Inc. RRG v. Ford Motor Co., 591 F.3d 458, 470-71 (5th Cir. 2009); Millennium Partners, L.P. v. Colmar Storage, LLC, 494 F.3d 1293, 1299 (11th Cir. 2007); Johnson v. Mamoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).

Plaintiffs utterly fail to establish good cause to amend at this juncture in the litigation. As noted earlier, the deadline to move for this relief was September 30, 2009. Plaintiffs failed to do so or move for an extension. They now contend that the claims they seek to add by amendment were only made known through a deposition that occurred 8 months ago. However, the mundane facts forming the basis for Plaintiffs purported new claims were evident since the outset of this case or, at the very least, long before they sought leave.

Plaintiffs assert the new claim for failure to maintain accurate records because the FBI did not include the disposition of each charge on Roggio's rap sheet and also listed expunged information (Pl.'s Brief Ex. A ("Revised Second Am. Compl.") ¶¶ 68-69). The failure to include the disposition of each charge or exclude expunged information would have been obvious from the time Plaintiffs first viewed the rap sheet or content from it—long before this case was even initiated. Plaintiffs assert the new claim for failure to investigate unlawful access to the criminal records system because the FBI was apparently made aware of the allegedly unlawful pull in Massachusetts and did nothing in response (Revised Second Am. Compl. ¶¶ 73-74). The FBI was made aware of the circumstances regarding this incident beginning in November of 2009, when counsel attended the deposition of one of the persons involved (Decl. of Harold Goldman in Supp. of Pl.'s Mot. to Compel Disc. ¶ 18 [CM/ECF No. 54]). The delay between November 2009 and April 2011, when the amended complaint containing these new claims was filed, is unexplained. Beyond the conclusory argument that it is based on "recent discovery," Plaintiffs

only support for this request is that Mr. Rudge testified during his deposition that the FBI is administratively required to maintain accurate records and investigate any purging of the database (Pl.'s Brief at 7; Pl.'s Reply at 13). His testimony does not, however, explain or justify the delay between November 2009 and April 2011. Plaintiffs were aware of the facts forming a basis for this purported claim long ago and their failure to move to amend constitutes a classic lack of diligence. See 6A Federal Practice & Procedure § 1522.2, at 325 ("Attorney neglect or inadvertence will not constitute good cause supporting modification."); Harrison Beverage, 133 F.R.D. at 469 (same). Plaintiffs' Fifth Amendment claim apparently seeks constitutional redress for the same alleged violations contained in the previous two claims (Revised Second Am. Compl. ¶¶ 61-62, 64). Good cause is not met for the same reasons described above.

Based on the Plaintiffs' failure to diligently pursue the new claims they now seek to add, there is no good cause to modify the scheduling order or permit amendment at this late date. Were the parties permitted to amend the pleadings at this point in the litigation, it would render the scheduling order meaningless. See Koplove v. Ford Motor Co., 795 F.3d 15, 18 (3d Cir. 1985); see also Globespan Virata, Inc. v. Tx. Instruments, Inc., No. 03-2354, 2005 WL 1638136, at *5 (D.N.J. July 15, 2005).

### B. Amendment Under Rule 15

Even assuming arguendo that Plaintiffs could establish good cause sufficient to modify the scheduling order, their amendments would also fail under Rule 15. First, there has been extreme delay which under the circumstances of this case would be prejudicial to the FBI. Since this is not the primary basis of the Court's decision and the delay is fairly apparent, the Court will not discuss it at length. Suffice it to say that re-opening discovery in a three (3) year-old case on claims that are arguably unrelated to the underlying transaction at issue, Fed. R. Civ. P.

20(a), would be prejudicial to Defendant. See Cureton v. Nat'l Coll. Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (indicating that "additional discovery, cost, and preparation to defend against new facts or new theories" can be prejudicial); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (delaying to seek leave on facts known since outset of dispute until three (3) years into the litigation is undue)). Because futility is less obvious, it will be briefly addressed.

"Futility" means that the proposed amendments would fail to state a claim upon which relief could be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). In other words, the amendment must be able to withstand a motion to dismiss. Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (citing Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)). However, given the liberal standard for the amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." See Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citing Miller v. Beneficial Mgmt. Corp., 844 F. Supp. 990, 1001 (D.N.J. 1993))); see also 6 Federal Practice and Procedure § 1487, at 741.

### i. Proposed Fifth Amendment Claim

As noted above, Plaintiffs seek leave to add a claim against the FBI for violating Roggio's Fifth Amendment rights. This proposed amendment is particularly troubling because Judge Linares already dismissed Plaintiffs' Fifth Amendment claim from the original complaint with prejudice in 2009. Roggio, 2009 WL 2460780, at *2. To the extent Plaintiffs amendment is another attempt to re-plead that same claim, Judge Linares' decision is dispositive. See Agostini v. Felton, 521 U.S. 203, 236 (1997) (explaining that "a court should not reopen issues decided in earlier stages of the same litigation" (citing Messenger v. Anderson, 225 U.S. 436, 444 (1912))). To the extent Plaintiffs' claim is premised on a different theory of harm, it would still fail for

substantially the same reasons stated in Judge Linares' opinion. See Roggio, 2009 WL 2460780, at *2 (observing that a Bivens action may not be maintained against a federal agency (citing FDIC v. Meyer, 510 U.S. 471, 486 (1994))). In other words, the amendment, even if different, would fail to cure the defect contained in the original Fifth Amendment claim. This was precisely why Judge Linares dismissed that claim against the FBI with prejudice. Plaintiffs' request for leave to add a Fifth Amendment claim fails on grounds of futility. See Winer Family Trust v. Queen, 503 F.3d 319, 330 (3d Cir. 2007) (amendment that fails to cure defect is futile).

### ii. Proposed "Administrative" Claims

The remaining two claims that Plaintiffs seek to add to the complaint assert causes of action against the FBI for failing to uphold "administrative" duties related to its criminal records system, commonly known as the National Crime Information Center ("NCIC"). Plaintiffs do not identify the legal source of their causes of action. Nevertheless, the request would be futile because the FBI is immune from suit with respect to these claims.

Generally speaking, the United States and its agencies enjoy sovereign immunity from suit and may only be subject to liability to the extent it waives that protection. See Meyer, 510 U.S. at 475; Beneficial Consumer Discount Co. v. Poltonowicz, 47 F.3d 91, 94 (3d Cir. 1995). The Privacy Act of 1974, 5 U.S.C. § 552a et seq., operates as a limited waiver of the United States' sovereign immunity. Pichler v. UNITE, 542 F.3d 380, 399 n.23 (3d Cir. 2008); McMillen v. U.S. Dep't of Treasury, 960 F.2d 187, 188 (1st Cir. 1991).[5] Section 552a(g) of the statute, entitled "Civil Remedies," confers a private right of action for any violation of the Act or any rule promulgated thereunder. 5 U.S.C. § 552a(g)(1). One provision in particular mandates that

---

[5] As a limited waiver of sovereign immunity, the Privacy Act is construed strictly in favor of the sovereign. See Orff v. United States, 545 U.S. 601-02 (2005) (citations omitted).

every agency maintain accurate records. See id. § 552a(e)(5). But the statute does not explicitly address the duty to investigate unlawful access. Pursuant to § 552a(f), the Department of Justice has, however, promulgated a comprehensive regulatory scheme concerning the access of records covered by the Act. See 28 C.F.R. § 16.40 et seq. For instance, each agency is required to establish administrative and physical controls to prevent unauthorized access. Id. § 16.51. Each is also responsible for ensuring that an entity that contracts to use the records systems fully complies with the terms of the contract. Id. § 16.52. As noted above, it is unclear precisely under which provision Plaintiffs purport to bring their new claims.

Regardless, Plaintiffs overlook the general exemption applicable to NCIC records. The Act also provides agencies with the authority to "promulgate rules . . . to exempt any system of records within the agency from any part of [the Act]." 5 U.S.C. § 552a(j)-(k). Consistent with this legislative mandate, the FBI has issued regulations exempting its NCIC from, inter alia, the accuracy requirement of § 552a(e)(5), the rule-making authority found in § 552a(f), and the civil remedy provisions of § 552a(g). 28 C.F.R. § 16.96(g); see also Vazquez v. U.S. Dep't of Justice, 764 F. Supp. 2d 117, 120 (D.D.C. 2011) (recognizing exemption of NCIC criminal history records); Sieverding v. U.S. Dep't of Justice, 693 F. Supp. 2d 93, 102-03 (D.D.C. 2010) (same). This exemption effectively restores the FBI's sovereign immunity from suit, and prevents Plaintiffs from availing themselves of the remedial provisions of § 552a(g)(1). See, e.g., Bassiouni v. FBI, 436 F.3d 712, 723 (7th Cir. 2006) (§ 16.96 forecloses ability to sue FBI for relief under subsection (g)); Nolan v. U.S. Dep't of Justice, 973 F.2d 843, 847 (10th Cir. 1992) (same); Doe v. FBI, 936 F.2d 1346, 1351 (D.C. Cir. 1991) (same); Alexander v. United States, 787 F.2d 1349, 1351 (9th Cir. 1986) (same).

Sovereign immunity impacts the Court's jurisdiction over a claim. See, e.g., Clinton

County Com'rs v. U.S. EPA, 116 F.3d 1018, 1021 (3d Cir. 1997). Because the FBI is immune from suit over the "administrative" claims that Plaintiffs now seeks to add, Plaintiffs' request for leave to assert these claims fails on grounds of futility. See Jones v. N.Y. State Div. of Military & Naval Affairs, 166 F.3d 45, 51 (2d Cir. 1999) (amendment adding claim against party immune from suit is futile).

### III. CONCLUSION

For the reasons stated above, Plaintiffs' motion for leave to file a second amended complaint is **denied**. A separate Order accompanies this Opinion.

                                     /s/ Mark Falk
                                     **MARK FALK**
                                     **United States Magistrate Judge**

Dated: August 17, 2011